UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMIZ ZIJAD HODZIC,  et al., | ) | No. 4:15 CR 49 CDP / DDN |
| | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**
**REGARDING MOTIONS TO DISMISS INDICTMENT**

Before the court are the pending motions of defendants Armin Harcevic (ECF No. 208), Sedina Hodzic (ECF No. 223), Nihad Rosic (ECF No. 225), Mediha Salkicevic (ECF No. 230), and Ramiz Hodzic (ECF No. 236) to dismiss the indictment.   The pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b).

All five movant-defendants are charged in Count 1 with conspiring to provide material support to terrorists, in violation of 18 U.S.C. § 2339A.   Defendants Ramiz Zijad Hodzic and Nihad Rosic are charged in Count 2 with conspiring to kill or maim persons in a foreign country, in violation of 18 U.S.C. §§ 956 and 2.   In Count 3 all five movant-defendants are charged with providing material support to terrorists, in violation of § 2339A.   (ECF No. 1.)

Defendants argue the indictment is legally insufficient on its face for many reasons, including arguments that (1) it fails to allege sufficient facts to constitute the required specific intent to support an act of terrorism required by 18 U.S.C. § 956(a)(1), that is, that defendant(s) provided material support or resources knowing or intending that they be used to carry out a conspiracy to commit murder or maiming under § 956(a)(1); (2) it fails to allege facts that constitute the alleged conspiracy to commit murder abroad,

in violation of § 956(a)(1); (3) it fails to allege facts that indicate that any alleged coconspirator supported a specific foreign terrorist organization at a specific time, as opposed to fighting against Syrian leader Bashar Al-Assad, a position that was consistent with the stated foreign policy of the United States government at the time alleged by the indictment; (4) the indictment's allegations that the defendants conspired to prepare to conspire are legally insufficient; and (5) the indictment fails to meet defendants' claims that the people they are alleged to have supported were lawful fighters.

## 1.   General Legal Standards

To be legally sufficient on its face, each count of the indictment must contain all the essential elements of the respective offense charged; it must fairly inform each defendant of the charge against which he or she must defend; and it must allege sufficient information to allow each defendant to plead a conviction or an acquittal as a bar to a future prosecution.   U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c)(1); *Hamling v. United States*, 418 U.S. 87, 117 (l974); *United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001).

In assessing the legal sufficiency of an indictment, the court must apply a reasonable construction to its allegations.   *United States v. Totaro*, 40 Fed.Appx. 321, 324 (8th Cir. 2002); *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995); *United States v. Awad*, 551 F.3d 930, 936 (9th Cir. 2009).   The court must consider the entirety of each respective count, not read the allegations "in a hyper technical fashion," and consider each count legally sufficient "unless no reasonable construction can be said to charge the offense."   *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998) (citations omitted).

The court also understands that an indictment that tracks the language of the applicable statute(s) is generally sufficient on its face.   *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

## 2.   Indictment's allegations

### a.   Introductory allegations

In the indictment the grand jury in 13 introductory paragraphs briefly describes the defendants, money transfer businesses, and individuals who were:

> located in Serbia, Bosnia and Herzegovina, and Montenegro, who individually traveled to, and fought in, Syria, Iraq and elsewhere **along with Abdullah Ramo Pazara** and others with, and in support of:  Al-Qa'ida in Iraq, Al-Nusrah Front, the Islamic State of Iraq and the Levant, and the Islamic State of Iraq and Syria, and who communicated with conspirators in the Eastern District of Missouri and elsewhere.

(ECF No. 1 Indictment at 2-3) (bolding added).   The indictment also describes Al-Qa'ida in Iraq as a "foreign terrorist organization" that has several alleged alias names, all of which are referred to in the indictment as "designated FTOs."   (*Id.*)

### b.   Count 1

The essential elements of the Count 1 offense are alleged in the indictment, *i.e.* that defendant(s) (1) knowingly conspired (2) to provide material support or resources, (3) *knowing and intending* that the support and resources were to be used in carrying out a violation of [18 U.S.C. § 956][1].   (*Id. at 4-5*); 18 U.S.C. § 2339A(a)[2]; *United States v.* Omar, 786 F.3d 1104, 1112-13 (8th Cir. 2015); *United States v. Hassan*, 742 F.3d 104,

---

[1] Section 956(a)(1) provides:  "Whoever, within the jurisdiction of the United States, *conspires* . . . to commit . . . an act that would constitute the offense of murder . . . or maiming if committed in the special maritime and territorial jurisdiction of the United States shall [be punished]."  18 U.S.C. § 956(a)(1) (italics added).

[2] Section 2339A(a) provides:  "Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, *knowing or intending that they are to be used in preparation for, or in carrying out,* a violation of section . . . 956 . . . or attempts *or conspires* to do such an act, shall be [punished]."  18 U.S.C. § 2339A(a) (italics added).

3

140 (4th Cir. 2014); *United States v. Stewart*, 590 F.3d 93, 116 (2d Cir. 2009); *United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007) .

Regarding the alleged violation of § 956, Count 1 specifically alleges that each defendant and others (including Pazara), during the period from at least May 2013 to the date of the indictment (February 5, 2015), conspired:

> to provide material support and resources, as defined in [18 U.S.C. § 2339A(b), including: [money and property], ***knowing and intending*** that such money and property were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to commit at places outside the United States acts that would constitute offenses and murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy.

(ECF No. 1 at 4-5, ¶ 2) (emphasis added); 18 U.S.C. § 956(a).

Count 1 also incorporates by reference the indictment's 13 introductory paragraphs of background information.   Count 1 also alleges in 45 enumerated paragraphs the specific acts of each defendant and coconspirators that constitute the "Manner and Means" by which the conspiracy was furthered.   (ECF No. 1 at ¶¶ 4-48.)

The manner and means of the conspiracy, alleged in Count 1, which are incorporated by reference into Counts 2 and 3, include the following about coconspirator Pazara:

> 4.     Abdullah Ramo Pazara and others persons known to the Grand Jury facilitated the conspiracy by traveling to Syria, Iraq, and elsewhere to support the designated FTOs and act as foreign fighters by participating in the ongoing conflict and otherwise engaging in acts of violence, [] including killing and maiming persons.

(*Id.* at 5.)

### c.    Count 2

Count 2 alleges the essential elements of the charged violation of 18 U.S.C. § 956(a), *i.e.* that defendants Ramiz Zijad Hodzic and Nihad Rosic: (1) within the jurisdiction of the United States, (2) knowingly conspired with each other and others, (3) to commit acts outside the United States, (4) that would constitute the offense of murder or maiming if committed within the special maritime and territorial jurisdiction of the United States; and (5) that one or more of the conspirators committed an act within the jurisdiction of the United States to effect the object of the conspiracy.   18 U.S.C. § 956(a).

Count 2 incorporates by reference the 13 introductory paragraphs of background information and from Count 1 the 45 paragraphs of acts that constitute the manner and means by which the conspiracy was furthered.

### d.    Count 3

Count 3 alleges the essential elements of the charged violation of 18 U.S.C. § 2339A, *i.e.*, that all six defendants (1) knowingly and willfully provided and attempted to provide (2) material supplies and resources, (3) "***knowing and intending*** that such support was to be used in preparation for, and in carrying out, a violation of [18 U.S.C. § 956(a), that is, a conspiracy to commit at places outside the United States acts that would constitute offenses of murder or maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy."   (ECF No. 1 at 17-18); 18 U.S.C. §§ 2339A(a), 956.

Count 3 also incorporates by reference the indictment's 13 introductory paragraphs of background information and Count 1's 45 paragraphs which describe the specific acts of the defendants by which the alleged conspiracy was furthered.

Clearly, Counts 1, 2, and 3 use the language of the respective statutes and contain all the essential elements of the offenses charged.

Defendants ground their arguments that the indictment is legally insufficient on its face by referring to the additional specific alleged facts attributed to the defendants.

<u>e.    Specific factual allegations</u>

Count 1's 45 enumerated "Manner and Means" paragraphs allege the following additional facts regarding the respective defendants.

(i)   Ramiz Zijad Hodzic

The indictment alleges defendant Ramiz Zijad Hodzic:

(a) sought out supporters and conspirators and solicited and received money with the intention that it be used to support Abdullah Ramo Pazara and others "who were fighting in Syria, Iraq, and elsewhere in support of the designated [Foreign Terrorist Organizations]" (ECF No. 1 at 5, ¶ 5);

(b) contributed his and coconspirators' personal money intending that the money be used as described in (a) (*id.* at 5-6, ¶ 6);

(c) used money obtained from conspirators to purchase and to ship specifically described materials and supplies with the same intention described in (a) (*id.* at 6, ¶ 7-8);

(d) sent money through money remitting businesses to intermediaries who transferred the money to Pazara with Hodzic having the same intention described in (a) (*id.* at 6-7, ¶ 9);

(e) transferred money to other individuals in Zenica, Bosnia, Herzegovina, and Montenegro "as support to" the families of people fighting in Syria, Iraq, and elsewhere and in support of the designated FTOs (*id.* at 7, ¶ 10; at 14, ¶ 44);

(f) knew that Pazara and others were fighting in Syria, Iraq, and elsewhere, and that these people received the money, materials, and supplies provided by defendants while Pazara and others "were engaged in violent activities overseas, including conspiring to murder and maim persons, and [defendant] further knew and intended that the materials, money, supplies, and property that were provided to" Pazara and others "would be used to support said individuals who were fighting with, and in support of the designated FTOs" (*id.* at 7, ¶ 11);

(g) used various electronic and digital media to, among other activities, communicate with conspirators about Pazara and other foreign fighters who were supporting the FTOs, to coordinate the transfer of money and property to the fighters, and to discuss weapons, tactics, and the violent activities of Pazara and others who supported the FTOs (*id.* at 8, ¶ 13);

(h) collected money from others and transferred it and his own money to his account and thereafter transferred it to others, including money transferred to Pazara and others fighting in Syria, Iraq, and elsewhere in support of the designated FTOs (*id.* at 9, ¶ 19; at 11, ¶¶ 26, 28; at 12, ¶ 34; at 13, ¶ 33; at 14, ¶ 43);

(i) purchased military type equipment from businesses in St. Louis (*id.* at 9-10, ¶ 20; at 11, ¶ 29);

(j) shipped military equipment and transferred money to an intermediary in Turkey, which equipment and money were provided to Pazara and others who were fighting in Syria, Iraq, and elsewhere in support of designated FTOs (*id.* at 10, ¶¶ 21, 24, 25; at 12, ¶ 33);

(k) on October 19, 2013, told defendant Mediha Salkicevic that as soon as shipments "crossed the border he would send her pictures" and thereafter sent Salkicevic a photo of two rifle scopes, telling her that they go on a sniper rifle   (*id.* at 11, ¶ 30);

(l) on April 1, 2014, told Nihad Rosic

7

[t]hat five good snipers could do wonders there (Syria); that he [(Ramiz Hodzic)] watched a video of "ours" in trenches and in warfare; that "ours" downed five and slaughtered them; and, that he watched the sharia punishment of a beheading . . . [and] that he watched a video where Abdullah Ramo Pazara's group fought through 200 kilometers, captured trenches, checkpoints, and houses and then fled.

(*id.* at 13-14, ¶ 40); and

(m) in August and September 2014, gave money to an individual who transferred it to another person in Zenica, Bosnia and Herzegovina, Ramiz Hodzic intending that the money be used by the individual to travel to Syria, transport supplies to, and join Pazara and others fighting in Syria, Iraq, and elsewhere in support of the designated FTOs (*id.* at 15, ¶¶ 46, 47).

(ii)   Sedina Unkic Hodzic

The indictment alleges defendant Sedina Unkic Hodzic:

(a) sought out supporters and conspirators, solicited and received money with the intention that it be used to support Abdullah Ramo Pazara and others "who were fighting in Syria, Iraq, and elsewhere in support of the designated [Foreign Terrorist Organizations]" (ECF No. 1 at 5, ¶ 5);

(b) contributed her and coconspirators' personal money intending that the money be used as in (a) (*id.* at 5-6, ¶ 6);

(c) used money obtained from conspirators to purchase and to ship specifically described materials and supplies with the same intention described in (a) (*id.* at 6, ¶ 7-8);

(d) sent money through money remitting businesses to third party intermediaries who transferred the money to Pazara with the same intention described in (a) (*id.* at 6-7, ¶ 9);

8

(e) transferred money to other individuals in Bosnia, Herzegovina, and Montenegro "as support to" the families of people fighting in Syria, Iraq, and elsewhere and in support of the designated FTOs (*id.* at 7, ¶ 10);

(f) knew that Pazara and others were fighting in Syria, Iraq, and elsewhere, and that these people received the money, materials, and supplies provided by the defendants while Pazara and others "were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to" Pazara and others "would be used to support said individuals who were fighting with, and in support of the designated FTOs" (*id.* at 7, ¶ 11);

(g) used various electronic and digital media to, among other activities, communicate with conspirators about Pazara and other foreign fighters who were supporting the FTOs; to coordinate the transfer of money and property to the fighters; and to discuss weapons, tactics, and the violent activities of Pazara and others who supported the FTOs (*id.* at 8, ¶ 13);

(h) collected money from others and contributed her own money, which she transferred to Ramiz Zijad Hodzic and a third party (*id.* at 8, ¶¶ 17-18, at 10, ¶ 25, at 11, ¶ 27);

(i) on October 28, 2013, shipped military items to an intermediary in Turkey (*id.* at 11-12, ¶ 31); and

(j) in September 2014, transferred money to an individual who transferred it to another person in Teslic, Bosnia and Herzegovina, intending that the money be used to support the individual who previously fought in Syria with Pazara and others in support of the designated FTOs (*id.* at 15, ¶ 48).

(iii)   Nihad Rosic

The indictment alleges Nihad Rosic:

(a) contributed his and coconspirators' personal money with the intention that the money be used to support Abdullah Ramo Pazara and others "who were fighting in Syria, Iraq, and elsewhere in support of the designated [Foreign Terrorist Organizations]" (*id.* at 5-6, ¶ 6);

(b) knew that Pazara and others were fighting in Syria, Iraq, and elsewhere and that these people received the money, materials, and supplies provided by the defendants while Pazara and others "were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to" Pazara and others "would be used to support said individuals who were fighting with, and in support of the designated FTOs" (*id.* at 7, ¶ 11);

(c) used various electronic and digital media to, among other activities, communicate with conspirators about Pazara and other foreign fighters who were supporting the FTOs, to coordinate the transfer of money and property to the fighters, and to discuss weapons, tactics, and the violent activities of Pazara and others who supported the FTOs (*id.* at 8, ¶ 13);

(d) on April 15, 2014, transferred money from New York to Ramiz Zijad Hodzic in St. Louis, Missouri (*id.* at 14, ¶ 41);

(e) on April 25, 2014, was told by Ramiz Hodzic that, if Rosic went to Syria, he would not need to buy equipment because Hodzic had everything for Rosic, and added that Rosic get a night vision optic with a built-in camera, so that when Rosic killed someone, he could record it (*id.* at 14, ¶ 42); and

(f) on July 20, 2014, attempted to board a flight from New York to Syria to join Pazara in Syria, Iraq, and elsewhere in support of the designated FTOs (*id.* at 15, ¶ 45).

10

(iv)   Mediha Medy Salkicevic

The indictment alleges defendant Mediha Medy Salkicevic:

(a) sought out supporters and conspirators and solicited and received money with the intention that it be used to support Abdullah Ramo Pazara and others "who were fighting in Syria, Iraq, and elsewhere in support of the designated [Foreign Terrorist Organizations]" (ECF No. 1 at 5, ¶ 5);

(b) contributed her and coconspirators' personal money intending that the money be used as in (a) (*id.* at 5-6, ¶ 6);

(c) knew that Pazara and others were fighting in Syria, Iraq, and elsewhere and that these people received the money, materials, and supplies provided by the defendants while Pazara and others "were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to" Pazara and others "would be used to support said individuals who were fighting with, and in support of the designated FTOs" (*id.* at 7, ¶ 11);

(d) used various electronic and digital media to, among other activities, communicate with conspirators about Pazara and other foreign fighters who were supporting the FTOs; to coordinate the transfer of money and property to the fighters; and to discuss weapons, tactics, and the violent activities of Pazara and others who supported the FTOs (*id.* at 8, ¶ 13);

(e) on October 19, 2013, told Ramiz Zijad Hodzic, after receiving a photo of two rifle scopes, that she hoped the scopes would reach "them" and be put to "good use" (*id.* at 11, ¶ 30); and

(f) transferred money to an account used by Ramiz Zijad Hodzic (*id.* at 13, ¶ 36).

11

(v)   Armin Harcevic

The indictment alleges Armin Harcevic:

(a) contributed his and coconspirators' personal money with the intention that the money be used to support Abdullah Ramo Pazara and others "who were fighting in Syria, Iraq, and elsewhere in support of the designated [Foreign Terrorist Organizations]" (*id.* at 5-6, ¶ 6);

(b) knew that Pazara and others were fighting in Syria, Iraq, and elsewhere and that these people received the money, materials, and supplies provided by the defendants while Pazara and others "were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to" Pazara and others "would be used to support said individuals who were fighting with, and in support of the designated FTOs" (*id.* at 7, ¶ 11);

(c) used various electronic and digital media to, among other activities, communicate with conspirators about Pazara and other foreign fighters who were supporting the FTOs, to coordinate the transfer of money and property to the fighters, and to discuss weapons, tactics, and the violent activities of Pazara and others who supported the FTOs (*id.* at 8, ¶ 13); and

(d) transferred money from his account to one used by Ramiz Zijad Hodzic (*id.* at 10, ¶ 23).


(vi)   Jasminka Ramic

Regarding defendant Jasminka Ramic, whose case has been already determined, the indictment alleges she:

(a) sought out supporters and conspirators and solicited and received money with the intention that it be used to support Abdullah Ramo Pazara and others "who were

fighting in Syria, Iraq, and elsewhere in support of the designated FTOs" (ECF No. 1 at 5, ¶ 5);

(b) contributed her and coconspirators' personal money intending that the money be used as in (a) (*id.* at 5-6, ¶ 6);

(c) knew that Pazara and others were fighting in Syria, Iraq, and elsewhere and that these people received the money, materials, and supplies provided by the defendants while Pazara and others "were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to" Pazara and others "would be used to support said individuals who were fighting with, and in support of the designated FTOs" (*id.* at 7, ¶ 11);

(d) used various electronic and digital media to, among other activities, communicate with conspirators about Pazara and other foreign fighters who were supporting the FTOs, to coordinate the transfer of money and property to the fighters, and to discuss weapons, tactics, and the violent activities of Pazara and others who supported the FTOs (*id.* at 8, ¶ 13);

(e) collected money from others and contributed her own money, which she transferred to Ramiz Zijad Hodzic and a third party (*id.* at 9, ¶ 17; at 11, ¶ 26); and

(f) on several occasions transferred her own money to Ramiz Hodzic (*id.* at 10, ¶ 22; at 12, ¶ 32; at 12-13, ¶ 35).

### 3.   Conspiracy to commit a conspiracy

Defendants argue that the indictment charges them with agreeing or conspiring to prepare for a subsequent agreement or, in other words, committing an inchoate conspiracy offense the object of which was preparation for a second inchoate offense,

referring to pages 4 and 5 of the indictment.    Defendants are entitled to no relief by this argument.

Count 1 alleges a conspiracy, which existed during the alleged period, unlawful under § 2339A(a), to commit another conspiracy, also which existed during the alleged period and which was unlawful under § 956(a)(1).    The "essence of conspiracy" is the agreement to violate the law.    *E.g., Smith v. United States,* 133 S. Ct. 714, 719 (2013); *United States v. Andrade*, 788 F.2d 521, 525 (8th Cir. 1986).    So long as the indictment's allegations are otherwise legally sufficient, nothing prohibits the grand jury from charging, as in this case, the existence of a conspiracy to commit another conspiracy.    *United States v. Khan*, 461 F.3d 477, 492-93 (4th Cir. 2006) (ruling the count based on 18 U.S.C. §§ 956 and 2339A "expressly contemplate[d] allowing one conspiracy to serve as the predicate offense for another conspiracy.    Nothing about the statutory framework is unconstitutional, improper, or even unusual."); *United States v. Stewart*, 590 F.3d at 117-19; *United States v. Sattar*, 314 F.Supp.2d 279, 306 (S.D.N.Y. 2004).

Defendant Ramiz Hodzic argues that the indictment need not have included factual allegations of terrorism or terrorist acts to charge a violation of §§ 956 and 2339A.    Whether or not that argument is accurate does not demean the legal sufficiency of the indictment otherwise.

### 4.   Specific intent to support the committing of murder or maiming

Putting aside the express statutory language of the indictment, defendants argue that the alleged specific facts do not indicate they specifically intended their aid or support to help others commit murder or maiming.    Rather, they argue the indictment alleges facts that indicate at most that they intended only to support Pazara generally.    The government argues that the indictment's factual allegations are sufficient to allege the defendants'

specific intent to aid or support the acts of others which acts would constitute the offenses of murder or maiming.

To decide this issue the court must consider the entirety of the respective allegations, must not read them "in a hyper technical fashion," and must consider the respective count legally sufficient "unless no reasonable construction can be said to charge the offense."  *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998).

Counts 1 and 3 also allege many facts which inform each defendant of the charges against which he or she must defend, *i.e.* more than the mere essential elements of the charged offenses.   These facts are alleged in the introductory paragraphs 1-13 (ECF No. 1 at 1-3) and in the "manner and means" 45 paragraphs expressly alleged in Count 1 (*id.* at 5-18), which are incorporated into Count 2 (*id.* at 16) and Count 3 (*id.* at 17).

The indictment's specific factual allegations create the context in which the express statutory language alleging defendants' knowledge and specific intention indicate the defendants knew how the support and resources they provided would be used by Pazara and the others.   The indictment's context includes the allegations in Count 1 ¶ 4, quoted above at pp. 4-5, regarding Pazara's fighting being the commission of acts of violence that included killing and maiming people.   It includes Count 1 ¶¶ 5 and 6 which allege the defendants knew Pazara and others were fighting in Syria, Iraq, and elsewhere.   And it includes the allegations in Count 1 ¶ 11:

> 11.    During the time period of the conspiracy, [all defendants] knew that [Pazara and others] were fighting in Syria, Iraq and elsewhere and that said individuals received materials, money, and supplies provided by the defendants while [Pazara and others] were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to said [Pazara and others] would be used to support said individuals who were fighting with, and in support of the designated FTOs.

(ECF No. 1 at 7.)   The indictment includes specific allegations against the respective defendants regarding their knowledge and specific intent.

### (a)   Ramiz Zijad Hodzic

The indictment expressly alleges defendant Ramiz Hodzic knew the foreign fighters he supported were involved in violent acts of killing and maiming.   Aside from the express allegations that he intended the money and property he provided be used to support Pazara's and the other fighters' support of the FTOs, the indictment also alleges he knew and told codefendant Nihad Rosic about the "slaughter," "beheading," and fighting he had seen on a video.   (ECF No. 1 at 13-14, ¶ 40.)

### (b)   Sedina Unkic Hodzic

Sedina Hodzic argues that the alleged facts do not indicate she specifically intended to aid or support a terrorist act, *i.e.* to commit murder or maiming.   She argues the indictment alleges that her intention was only to support Pazara as a fighter generally and not more specifically knowing or intending that he was engaged in murder and maiming. As stated, the court must consider the entirety of the respective count and not read the allegations "in a hyper technical fashion" and to consider the count legally sufficient "unless no reasonable construction can be said to charge the offense."   *United States v. O'Hagan*, 139 F.3d at 651.

The allegations identified above in which defendant Sedina Hodzic is expressly implicated indicate she knew the foreign fighters she supported were involved in violent acts of killing and maiming.   Counts 1 and 3, when reasonably considered in their respective contexts, allege Sedina Hodzic had the specific intent required by 18 U.S.C. §§ 2339A and 956(a).

16

(c)   Nihad Rosic

All of the allegations of the indictment relating to Nihad Rosic, *see* pages 10-11 above, including the conversations the grand jury alleges defendant had with Ramiz Hodzic, sufficiently allege he knew the coconspirators were engaged in a conspiracy that involved maiming and murder.

(d)   Mediha Medy Salkicevic

Similarly, considering the allegations about Pazara's involvement in violent acts of killing and maiming, the allegations involving Mediha Salkicevic include her knowing and intending that her support for Pazara and the others be used for the alleged activities of murder and maiming.

(e)   Armin Harcevic

The allegations set forth above regarding Armin Harcevic specifically involve his contributing his and others' money with the intention to support Pazara and others who were fighting in support of the FTOs.  Harcevic argues that the legislative history of §§ 2339A(a) and 2339B establishes that the government must prove that one who contributes money to an organization must have intended that the money be used to commit the acts Congress described, not just give the money to an individual (Pazara) for his general support.

With respect to each of the defendants, the government acknowledges its burden of proof at trial "to prove that the defendants conspired to provide (Count I), provided and attempted to provide (Count III) material support knowing or intending that such money and property were to be used in preparation for, or in carrying out, the overseas conspiracy to murder or maim."   (ECF No. 261 at 18.)

17

Defendant Harcevic argues that Counts 1 and 3 do not provide sufficient information for him to defend against the nature of the "murders" and "fighting" referred to in § 956(a) and the indictment, *i.e.,* how they were committed to avoid alleging alternative theories of prosecution.   Defendant argues the grand jury's use of "fighting" could include "lawful combat" that includes "the use of snipers, wearing of uniforms, conduct of military operations to acquire control of territory, and the killing of opposing belligerents, etc."   (ECF No. 212 at 18.)   Defendant also argues that Pazara's agreement to engage in combat was lawful under the "laws of war" and, as such, was not an agreement to commit murder.   Thus, Harcevic argues he is immune from prosecution in this case because he is alleged to have supported Pazara who was engaged in lawful combat.   (*Id.* at 19.)

As stated below, these arguments are in the nature of an affirmative defense, on which the defendants who make them bear the burden of proof at trial.   Defendant Harcevic seeks a pretrial hearing where his immunity from prosecution can be determined.   The proper procedures for litigating such an affirmative defense are discussed below.

### 5.   Failure to allege the target(s) of the Count 2 conspiracy

Defendants argue the allegations of conspiracy to commit acts of murder or maiming outside the United States, in violation of 18 U.S.C. § 956, are legally insufficient because they fail to identify the target(s) of this conspiracy and where and when these acts were to occur.   The court disagrees.   On their face neither § 956 nor § 2339A require that defendants know the identities of the intended victims or where outside the United States the murder or maiming was to occur.   *United States v. Sattar*, 314 F.Supp.2d at 304.

Defendants Salkicevic and Rosic argue the indictment's allegations about terrorist organizations are factually insufficient, "because it is impossible as a practical matter to determine the identities and allegiances of those fighting in Syria."     (ECF No. 237 at 5.) This argument is without merit, because a connection between defendants and an FTO, important to a prosecution under 18 U.S.C. § 2339B, *see* 18 U.S.C. § 2339B(a), is not among the statutory requirements of §§ 2339A and 956(a).     *See* 18 U.S.C. §§ 956(a), 2339A(a).     Rather, this argument anticipates an argument about the legal sufficiency and persuasiveness of the government's trial evidence, not the legal sufficiency of the allegations in the indictment.

Counts 1 and 3, when reasonably considered in their respective contexts, allege that each of the defendants had the specific intent required by 18 U.S.C. §§ 2339A and 956(a). Much of defendants' arguments are grounded on the proposition that the government's evidence, as described in the indictment, is insufficient.   Such is an argument that must await assessment of the evidence at trial; it is not litigable in a pretrial motion to dismiss. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001); *United States v. Lindh,* 212 F. Supp.2d 541, 576 (E.D. Va. 2002) ("There is no requirement for the government to detail its evidence in the indictment.").

### 6.   Affirmative defense of lawful combat

Several defendants argue for relief due to the affirmative defense that they are alleged to have supported fighters who were lawful combatants.   Defendant Harcevic argues that the indictment's use of "fighting" is insufficient for him to determine whether the alleged fighting involved "lawful killing incident to armed conflict or murder."   (ECF No. 212 at 6.)   Defendant Salkicevic argues that the indictment contains too little facts to indicate whether Pazara acted as "part of a military organization and under the orders of a superior."   (ECF No. 231 at 11-12.) Defendant Rosic argues "whether or not combat

activities are privileged is dependent on whether the combatants generally conduct their operation in accordance with the law of war."  (ECF No. 227 at 16.)  Defendants also argue they are entitled to pretrial relief due to the foreign policy of the United States regarding aid to fighters in the Syrian conflict.

The government agrees with defendants that the existence of lawful combatant immunity is a fact-intensive inquiry.  (ECF No. 261 at 34.)  *Cf. United States v. Lindh*, 212 F.Supp.2d 541, 556 n. 36, 557 (E.D. Va. 2002) (regarding lawful combatant immunity, ruled against defendant based on pretrial oral argument).  In *Lindh*, defendant sought dismissal of certain counts charging him with participating in combat in foreign terrorist organizations and against American forces and allied forces.  He argued before trial that he was entitled to lawful combat immunity as a Taliban soldier.  In deciding that Lindh was not entitled to lawful combatant immunity status, the court considered many factors, including the bases of the doctrine, its components, Lindh's burden of establishing his entitlement to this immunity, and the President's entitlement to deference in the decision that Lindh's status as a combatant was unlawful.  212 F.Supp.2d at 553-58.

Contrary to the arguments of defendants, a grand jury is not required to anticipate and to make allegations regarding a defendant's affirmative defense to the charges in the indictment; an affirmative defense is to be decided by the jury in the trial of the offense charged in the indictment.  *United States v. Sisson*, 399 U.S. 267, 301 (1970) (regarding conscientious objection defense); *United States v. Yunis*, 924 F.2d 1086, 1097-99 (D.C. Cir. 1991) (regarding affirmative defense of obedience to military orders); *United States v. Shields*, 2013 WL 5221998 at *2 (W.D. Mo. 2013) (regarding statutory affirmative defense to child pornography possession charge).

Nevertheless, as defendant Harcevic specifically requests, a pretrial hearing might be conducted under Fed. R. Evid. 104 to decide the legal and evidentiary sufficiency of such an affirmative defense.

20

## RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY RECOMMENDED** that the motions of defendants Armin Harcevic (ECF No. 208), Sedina Hodzic (ECF No. 223), Nihad Rosic (ECF No. 225), Mediha Salkicevic (ECF No. 230), and Ramiz Hodzic (ECF No. 236) to dismiss the indictment be denied.

The parties have until September 9, 2016 to file documentary objections to this Report and Recommendation.  The failure to file timely documentary objections may waive the right to appeal issues of fact.


_____/s/_____David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**


**Signed on August 22, 2016.**