UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CR 49 CDP |
| | ) | |
| RAMIZ ZIJAD HODZIC, | ) | |
| SEDINA UNKIC HODZIC, | ) | |
| NIHAD ROSIC, | ) | |
| MEHIDA MEDY SALKICEVIC, | ) | |
| and ARMIN HARCEVIC, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motions to dismiss the indictment. Defendants' first set of motions to dismiss challenged the facial sufficiency of the indictment for a number of reasons. The second group of motions argued that defendants' actions, and those of the person to whom they allegedly provided support, Abdullah Ramo Pazara, were part of legitimate warfare; they argue that they are immune from prosecution under the doctrine of lawful combatant immunity. I conclude that the indictment is valid on its face and sufficiently alleges the crimes charged. I also conclude that because Pazara was

fighting in a noninternational armed conflict – the Syrian civil war – these defendants are not entitled to assert the defense of lawful combatant immunity.

All pretrial motions in this case were referred to United States Magistrate Judge David D. Noce pursuant to 28 U.S.C. § 636(b). Judge Noce filed two Reports and Recommendations on the motions. I have conducted *de novo* review of the motions, including reviewing in full the parties' briefs and exhibits, conducting my own independent research, holding oral argument on the lawful combatant motions, and considering Judge Noce's well-reasoned and well-researched opinions. While I ultimately have reached a conclusion different from his on the lawful combatant issue, I appreciate, as always, his careful attention to the arguments, and his exhaustive historical and legal research in this difficult case.

## First Report and Recommendation – Facial Sufficiency of Indictment

In their first set of motions, defendants challenged the sufficiency of the indictment for a number of reasons. Judge Noce rejected the arguments and concluded that the indictment sufficiently alleged the stated violations of 18 U.S.C. § 2339A and 18 U.S.C. § 956. He recommended that I deny the motions to dismiss, and defendants have objected to that recommendation. I conclude that

Judge Noce's recommendations regarding the facial validity of the indictment are correct.[1]

Counts I and III allege that all defendants violated 18 U.S.C. § 2339A. Specifically, these counts allege that defendants conspired to provide or provided material support and resources knowing and intending that the support would be used in preparation for and carrying out, in a foreign country, a crime that would be conspiracy to commit murder and maiming if committed in the United States. Count II alleges that defendants Ramiz Zijad Hodzic and Nihad Rosic conspired to commit a crime that would be murder and maiming if committed in the United States, in violation of 18 U.S.C. § 956(a). The indictment alleges, in more than 40 separate paragraphs, actions taken by the defendants in furtherance of the conspiracy. After Abdullah Ramo Pazara traveled to Syria to act as a foreign fighter, the defendants sent him and others money, materials and supplies that could be used to fight in the Syrian civil war.

Pazara is alleged to have fought with various groups, including some designated as foreign terrorist organizations. He arrived in Syria in July of 2013, and was killed in September of 2014. The indictment alleges that over that time

---

[1] The initial round of motions also raised the lawful combatant defense, but because those were the subject of the second group of motions and the second Report and Recommendation, I will discuss those arguments in the next section.

period the defendants communicated among themselves and with Pazara using social media and coded language to avoid detection. The indictment alleges that the defendants knew that Pazara was fighting in Syria, Iraq and elsewhere, knew that he and others were "conspiring to murder and maim persons," and knew and intended that he and others would use the money and property they sent to support individuals who were fighting in support of terrorist organizations. In particular, it alleges that defendants provided or conspired to provide material support knowing or intending that the support was to be used in preparation or carrying out a conspiracy to murder or maim. These allegations are sufficient under the law, as they allege all of the elements of the offenses charged in the indictment, including the necessary intent. They do not improperly allege "multiple inchoate" offenses, but instead allege a conspiracy to commit a specific crime. Further, the indictment is sufficiently specific, and need not allege particular intended victims. As to each defendant and to each charge, the indictment is sufficient.

I will therefore adopt in full the first Report and Recommendation of the United States Magistrate Judge [#328] and will deny the initial motions to dismiss.

## Second Motions to Dismiss – Lawful Combatant Immunity

Both sides have objected to Judge Noce's recommendations on the lawful combatant motions. Judge Noce concluded that the indictment should not be

dismissed, but that defendants should be allowed to present evidence at trial on their defense of lawful combatant immunity. Judge Noce disagreed with the government's position that defendants were not entitled to assert this defense at all. Both sides have objected to the Report and Recommendation. Defendants object that they are entitled to an evidentiary hearing and dismissal of the indictment. The United States objects that, as a matter of law, defendants may not assert the defense at all.

Judge Noce's factual findings are correct and are largely undisputed by the parties, so I will adopt them. With regard to his legal conclusions, however, after careful consideration, I disagree with the result reached and so will not adopt the conclusion that defendants may attempt to prove this defense at trial. Instead, I agree with the government that defendants are not entitled to assert the defense of lawful combatant immunity. I conclude that lawful combatant immunity cannot apply to actions of combatants who were involved in a noninternational armed conflict. To the extent that pre-Geneva Convention cases recognized a common law lawful combatant defense, that body of law has been superseded by the Geneva Conventions. At the time that Abdullah Ramo Pazara fought in the Syrian civil war (2013 and 2014), which is the same time defendants here are alleged to have provided support to terrorism, the Syrian civil war was a noninternational

armed conflict. As such, Pazara did not qualify as a lawful combatant, and defendants here may not assert combat immunity as a defense. I will therefore deny the motions to dismiss in their entirety, and will not allow defendants to present at trial any evidence or arguments about this defense or about their alleged mistaken belief that it might apply.

The Fourth Circuit Court of Appeals recently considered and rejected the same argument made here in the case of *United States v. Hamidullin*, 888 F.3d 62 (4th Cir. 2018), *petition for cert. pending,* No. 18-6011 (filed Sept. 13, 2018).[2] Defendant Hamidullin was charged with providing and conspiring to provide material support to terrorists in violation of 18 U.S.C. § 2339A, the same as defendants here. He argued, the same as defendants here, that he was entitled to combatant immunity.

Hamidullin was affiliated with the Taliban and Haqqani Network and was captured in Afghanistan in 2009. The Court of Appeals reviewed the doctrine of combatant immunity and noted that it is codified in the Third Geneva Convention.[3] 888 F.3d at 66. The Court held that "Article 2 of each of the Geneva Conventions renders the full protections of the Conventions, including combatant immunity,

---

[2] This case was decided after Judge Noce issued his Report and Recommendation, so he did not have the benefit of considering the Court of Appeals' decision.
[3] Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T.

applicable only in international armed conflicts between signatories of the Conventions." *Id.*

To be entitled to combatant immunity, the Fourth Circuit explained,

> . . . the Third Geneva Convention requires that a combatant (1) be captured *during an international armed conflict*, Third Geneva Convention, art. 2, *and* (2) be a lawful combatant – in other words, the combatant must belong to one of the Article 4 categories defining POW's, *id.* art 4. . . . Article 4(A)(2) provides that members of militias belonging to a party to the conflict are lawful combatants entitled to POW status so long as they are commanded by a person responsible for subordinates, carry a "fixed distinctive sign," carry arms openly, and operate in accordance with the laws of war. *Id*. art. 4(A)(2).

888 F.3d at 74 (emphasis added). The Court then concluded that the conflict in Afghanistan was not an international armed conflict and that therefore Hamidullin was not entitled to combatant immunity:

> When a conflict is not an international conflict between Geneva Convention signatories, at least one article of the Geneva Conventions still applies. Article 3 of each Convention provides that in an "armed conflict not of an international character occurring in the territory of one of the High Contracting Parties, each Party to the conflict shall be bound to apply, as a minimum," certain provisions, including protecting "[p]ersons taking no active part in the hostilities," and refraining from "the passing of sentences and the carrying out of executions without previous judgment *pronounced by a regularly constituted court* affording all the judicial guarantees which are recognized as indispensable by civilized peoples." *Id.* . . . Thus, Article 3 allows for combatants captured during non-

---

3316, 75 U.N.T.S. 135.

> international conflicts to face trial and judgment for their actions as long as they are tried in the opposing force's country's "regularly constituted court." *Id.*

888 F.3d at 67 (emphasis added). The Fourth Circuit therefore concluded that Hamidullin could be tried in a regularly constituted court such as the United States District Court. *Id.* at 71,75.

The Fourth Circuit also rejected Hamidullin's alternative argument that he was eligible for common law combatant immunity. It held that because the Geneva Convention "is the governing articulation of lawful combatant status" the conventions supersede common law. 888 F.3d at 75. "Just as a statute preempts common law when Congress speaks directly to the question, a self-executing treaty like the Third Geneva Convention would similarly preempt common law if the treaty speaks directly to the question. The Third Geneva Convention explicitly defines the category of individuals entitled to POW status, and concomitantly, combatant immunity." *Id.* at 75-76 (citation omitted). Moreover, all courts in modern times that have considered claims of lawful combatant immunity have analyzed it under the Geneva Conventions. *See United States v. Hausa*, 258 F. Supp. 3d 265, 273 n. 6 (E.D.N.Y. 2017); *United States v. Pineda*, No. CR. 04-232(TFH), 2006 WL 785287 (D.D.C. Mar. 28, 2006); *United States v. Arnaout*,

236 F. Supp. 2d 916, 917-18 (N.D. Ill. 2003); *United States v. Lindh*, 212 F. Supp. 2d 541, 553 (E.D. Va. 2002).

Defendants' briefs make numerous factual arguments seeking to distinguish the Afghanistan conflict from the Syrian civil war, but they do not argue that Pazara was fighting in an international armed conflict. They argue that because Pazara met the Article 4(A)(2) qualifications of being under the command of an individual responsible for his subordinates, wearing a uniform and carrying weapons openly, and conducting operations in accord with the laws of war,[4] he is entitled to immunity. But because it is uncontested that Pazara was not fighting in an international armed conflict, the provisions on which defendants rely are irrelevant. Those provisions allow the additional minimal humanitarian protections available to combatants captured in noninternational armed conflicts. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 629-32 (2006) (distinguishing between Geneva Convention provisions in Common Article 2 – including those related to combatant immunity – that apply only in international armed conflicts between signatories from the minimal protections available to prisoners of war under Common Article 3). In other words, had Pazara been captured he might have been entitled to certain minimal humanitarian treatment, but that does not mean he

---

[4] The government does not agree that Pazara fought with groups that followed the laws of

qualified for lawful combatant immunity. As the Supreme Court noted in *Hamdan*, these are different provisions of the Conventions.[5]

Judge Noce's reliance on pre-Geneva Convention case law, including *United States v. Palmer*, 16 U.S. 610 (1818), *The Ambrose Light*, 25 F. 408 (S.D.N.Y. 1885), and *Ford v. Surget*, 97 U.S. 594 (1878), to recognize the common law principle of combatant immunity was therefore misplaced. The careful distinctions made in the Convention between the protections that apply in international armed conflicts between signatories to the Conventions and those fighting in noninternational conflicts means that the Civil War cases and others relied on by Judge Noce no longer apply to this situation. Additionally, while it is clear that the government can always choose not to prosecute a party who fights and kills people in a civil war, there is nothing in the law that says the government cannot prosecute such a person if it believes that person has committed crimes such as murder or conspiracy to murder.

For the above reasons, I conclude that the defendants in this case are not entitled to combatant immunity. Their assertion of this defense fails, and they may not assert it as a defense at trial. I will deny the motions to dismiss in their

---

war, but I need not decide that at this time.

[5] "We need not decide the merits of this argument [about whether the conflict with al Qaeda was covered by Common Article 2] because there is at least one provision of the Geneva Conventions

entirety, and will not allow at trial evidence or arguments that Pazara's actions are protected by lawful combatant immunity.

Accordingly,

**IT IS HEREBY ORDERED** that the First Report and Recommendation of the United States Magistrate Judge [328] is **SUSTAINED, ADOPTED, and INCORPORATED** herein and defendants' initial motions to dismiss [208, 223, 225, 230, 236] are denied.

**IT IS FURTHER ORDERED** that the Second Report and Recommendation of the United States Magistrate Judge [429] is not adopted except as to the factual section. The second round of motions to dismiss [390, 393, 395] are denied. Defendants may not assert the lawful combatant immunity defense at trial.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of February, 2019.

---

that applies here even if the relevant conflict is not one between signatories." 548 U.S. at 629.